IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

TERENCE T. STEINER,

    Plaintiff,

v.                                       CIVIL ACTION NO. 3:14-CV-00532

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

# MEMORANDUM OPINION

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act. This case is presently pending before the court on cross-motions for judgment on the pleadings. Both parties have consented to a decision by the United States Magistrate Judge.

    Claimant, Terence T. Steiner, filed an application for disability insurance benefits (DIB) on December 7, 2010. The claim was denied initially on March 28, 2011, and upon reconsideration on July 8, 2011. Claimant filed a request for hearing on July 15, 2011. A hearing was held on May 2, 2012, in Huntington, West Virginia. The Administrative Law Judge (ALJ) denied Claimant's application on July 3, 2012. The Appeals Council denied Claimant's request for review on November 7, 2013 (Tr. at 2). Claimant filed a complaint for review of the decision in federal court on January 6, 2014.

    Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically

determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2014).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2014).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity during the period of time from his alleged onset date of July 31, 2007, through his date last insured (DLI) of March 31, 2011 (Tr. at

19). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of bipolar disorder and degenerative joint disease of the ankle and back. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 20). The ALJ then found that Claimant has a residual functional capacity for light work except he can only occasionally engage in the climbing, stooping, kneeling, crouching and crawling (Tr. at 21). Claimant can only lift 20 pounds occasionally and no more than 10 pounds frequently. He cannot work around vibration, heights or around dangerous machinery. He is limited to simple, routine instructions, but can concentrate on simple work given normal breaks every two hours. He can relate to co-workers and supervisors in a non-public work setting with limited and casual contacts; can adapt to only routine changes in the work setting. The ALJ held that Claimant was unable to perform any past relevant work (Tr. at 28). Nevertheless, the ALJ concluded that Claimant could perform jobs such as office cleaner, sorter and food service worker, in the light level of exertion. (Tr. at 29). In the sedentary level of exertion, Claimant could work as an assembler, inspector and sorter. *Id*.

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence. *Hays v.Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

### Claimant's Background

Claimant was born on November 12, 1970. Claimant does not have a driver's license anymore. He last drove on October 30, 2004 (Tr. at 36). Claimant graduated from high school, has a degree in psychology and has completed his course work for a master's degree. Id. Claimant's onset date of July 31, 2007, is when his grandfather died, his cat died, his four year relationship dissolved and he checked himself into a hospital (Tr. at 37). He attempted to work after his onset date but failed due to trouble with his bipolar impairment. Claimant physically broke his back and shattered an ankle in 1998.

### The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence because the ALJ failed to properly evaluate Claimant's credibility (ECF No. 11). Claimant asserts that the ALJ used "boilerplate" credibility language, therefore, warranting a remand in this case. Claimant further asserts the ALJ failed to properly consider the opinion of his treating psychiatrist. Claimant submitted a post-hearing mental assessment from his treating psychiatrist which reflects that he suffers from moderate to severe

4

mental impairments and symptoms resulting from Bipolar Disorder Type I.

Defendant asserts that Claimant did not meet his burden of proof. Defendant asserts that substantial evidence supports the Commissioner's decision that Claimant retained the residual functional capacity (RFC) to perform simple, routine work (ECF No. 14). Defendant further asserts that the ALJ considered the opinion of Claimant's treating psychiatrist, however, the psychiatrist's statements were not accompanied by objecting findings. *Id.* Additionally, Defendant asserts that Claimant's treating psychiatrist's opinion was made over one year after Claimant's date last insured (DLI) and is therefore irrelevant to the period in question.

## Remand

The social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); *Melkonyan*, 501 U.S. at 97. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. *Melkonyan*, 501 U.S. at 98.

## Physical Health

On September 12, 1998, Claimant injured his hip, back and ankle. On October 29, 1998, Jack R. Steel, MD, noted Claimant's L/2 (back) compression fracture, left tibial pilon fracture and right ankle fracture (Tr. at 864). On December 2, 1998, Dr. Steel reported that at approximately three months post injuries, Claimant was doing well. The notes reflect that Claimant had been swimming to improve his joint motion (Tr. at 863). On January 6, 1999, Dr.

Steel noted that Claimant was doing very well. Claimant's fractures were reported as healed. Dr. Steel noted that Claimant was walking with a minimal limp (Tr. at 862).

Claimant testified to having surgery on his right foot (Tr. at 38). Claimant stated that what used to take him 20 to 30 minutes to get ready and leave his home now takes him 3 hours to accomplish. Claimant testified that he experiences tremors. Claimant testified that his prior problems with alcohol abuse was due to his attempt to self-medicate so that he could sleep (Tr. at 41).

Claimant's Personal Pain Questionnaire dated January 25, 2011, reflects complaints of throbbing and locking pain for approximately 2 hours which he experiences "when inflamed," in the morning and at night (Tr. at 179) (Tr. at 179-183). Claimant's remarks on the questionnaire state that his original prognosis after his ankle and back injury in 1998 was that he would not walk again (Tr. at 183).

Kip Beard, M.D., conducted an internal medicine examination on March 16, 2011, in Huntington, West Virginia (Tr. at 768-772). Dr. Beard noted upon physical examination that Claimant's gait was "mildly limping on the left" (Tr. at 770). Claimant did not require ambulatory aids. Dr. Beard stated that Claimant has a history of fracture requiring fusion and instrumentation (Tr. at 772). Dr. Beard reported that Claimant experiences "intermittent, piercing pain" in the lower back and at the left hip running down his left leg (Tr. at 768). Claimant rated this pain to be and 8 out of 10 with 1 being the lowest amount of pain and 10 being the most amount of pain. Claimant reported difficulty walking due to his pain. Dr. Beard reported that "Examination of the left knee revealed some mild pain and tenderness…" and "the left ankle revealed some mild pain and tenderness without redness, warmth or swelling and normal range of motion" (Tr. at 771).

In a Physical Residual Functional Capacity Assessment dated March 21, 2011, Uma Reddy, MD, opined that Claimant's complaints of hip and ankle pain were minimally credible because his medical evidence does not indicate any disabling limitations physically and because he is not on pain medications (Tr. at 778). H. Hoback Clark, MD, reported in a Case Analysis dated March 25, 2011, that "Dr. Saar opines that [Claimant] is credible as claims concur with MER [medical evidence of record]. He finds all areas of function mildly limited…" (Tr. at 781).

Notes by Stanley S. Tao, MD, dated May 17, 2011, reflect that Claimant complained of joint pain, weakness and numbness/tingling (Tr. at 854). Claimant complained of constant swelling in his ankle. Dr. Tao reported joint swelling, pain, stiffness, loss of motion and loss of strength. He reported the absence of joint redness, numbness and tingling and radicular pain. Id. Upon physical examination, Dr. Tao reported viewing x-rays of Claimant's lower extremeties which reflect "possible old healed anterior plafond fracture; mild degenerative changes; possible small loose body" (Tr. at 855). Dr. Tao's plans included steroid injection (Tr. at 855-856).

Notes by Dr. Tao dated June 8, 2011, reflect that Claimant complaint of joint pain, weakness, numbness/tingling, had worsened in the prior 6-9 month (Tr. at 852-853). Dr. Tao assessed Claimant with osteoarthrosis, joint pain and bursitis of the hip (Tr. at 853). Dr. Tao's plans included joint injections for the hip. Dr. Tao reported that Claimant's ankle pain was better and had no restrictions. *Id.*

On June 28, 2011, Marcel Lambrechts, MD, performed a case analysis upon reviewing Claimant's file and Dr. Reddy's Physical Residual Functional Capacity Assessment and opined that she "did not find much to change [Dr. Reddy's] RFC… , this Claimant had some mental problem too (bipolar). Recently she c/o both ankles [experiencing] pain but it was not supported by physical evidence. She has a strained back and probably [osteoarthritis] in her left hip. No

changes need to be made in her RFC" (Tr. at 857). Although Dr. Lambrechts reviewed Claimant's file, she repeatedly referred to him as a "she" in the case analysis.

## Mental Health

In May of 2006, Claimant was hospitalized, diagnosed with bipolar disorder and placed on Lithium (Tr. at 263). In June of 2007, Claimant began treatment at Prestera Center (Prestera). Claimant reported that he had cycles of manic behavior and depression, but that when he had been on Lithium he had stayed sober 10 months. Claimant was diagnosed with bipolar affective disorder and alcohol abuse (Tr. at 526).

Claimant reported on a Recent Medical Treatment form for the Social Security Administration that he sees Dr. Tao "for degenerative arthritis in both ankles and bursitis of the hip with cortisone shots" (Tr. at 222). On May 23, 2006, attending physician, George Gharda-Ward with the Psychiatric Center at the Flagler Hospital in St. Augustine, Florida, diagnosed Claimant with bipolar disorder (Tr. at 263). According to Prestera Mental Health Center's records, Claimant first discovered that he had bipolar disorder with manic-depressive episodes in 2006 (Tr. at 581). In St. Mary's Medical Center's discharge summary on November 2, 2008, Claimant was diagnosed with mood disorder, bipolar disorder, anxiety disorder, alcohol dependence, nicotine dependence and cocaine abuse (Tr. at 383). The discharge summary stated that Claimant has a history of intermittent self-cutting behavior. *Id.*

Thereafter, Claimant made monthly visits to Prestera. In November of 2007, Claimant reported to living in his own apartment and believing that his medications were "kicking in" (Tr. at 442). By February of 2008, Claimant reported that his bipolar disorder seemed to be under control (Tr. at 442). On July 14, 2008, Claimant was discharged from Prestera (Tr. at 432). In November of 2008, Claimant was admitted to the hospital for suicidal ideation, after quitting taking Lithium two weeks earlier and self-medicating with alcohol (Tr. at 287).

8

In March of 2009, Claimant reported to recognizing that he cycles with his bipolar disorder (Tr. at 454). On March 11, 2009, Claimant underwent a consultative examination with Lisa Tate, M.A., who diagnosed him with bipolar disorder, NOS, based on reports of periods of depression with social withdrawal, excessive sleeping, and loss of appetite, followed by manic episodes with impulsivity, excessive energy, and lack of need for sleep (Tr. at 357). Claimant was also diagnosed with panic disorder with agoraphobia because of panic attacks and reluctance to leave home and alcohol dependence. *Id.*

In June of 2009, Claimant told his therapist that he was feeling fine (Tr. at 467). In August of 2009, Claimant reported that he was cycling more rapidly since his medication had been changed (Tr. at 457). On September 28, 2009, Claimant reported feeling better after his medication dosage was increased (Tr. at 459). In October of 2010, Claimant was admitted to a hospital for attempted overdose. He was subsequently admitted for inpatient treatment from November 12, 2010, to November 24, 2010 (Tr. at 613).

Claimant returned to Prestera on December 6, 2010 (Tr. at 608-611). Claimant first saw psychiatrist Rownak Afroz, M.D., on December 11, 2010 (Tr. at 613). On December 22, 2010, claimant reported to enjoying time spent with his grandmother (Tr. at 612).

On February 16, 2011, Claimant was admitted to St. Mary's Hospital for symptoms of depression and suicidal thoughts (Tr. at 795-799). Claimant reported there had been 8 deaths in his immediate family and that he could not take much more (Tr. at 795). Claimant was discharged on February 24, 2011, with diagnoses of bipolar affective disorder, NOS; anxiety disorder, NOS; alcohol dependence, episodic; nicotine dependence; and cocaine abuse in remission (Tr. at 798).

On his mental status examination, dated March 12, 2011, Claimant reported to Dr. Afroz that he was doing better (Tr. at 831). It was noted in the mental status examination that his

9

appearance, sociability, speech and thought content were all within normal limits. Claimant was oriented to person, place, situation and time (Tr. at 832). Claimant's recall and copeability were normal. Claimant's affect was appropriate and his motor activity was within normal limits. Claimant denied suicidal and homicidal ideation.

On May 5, 2012, Dr. Afroz completed a Mental Status Statement – Ability to Do Work-Related Activities form (Tr. at 985-988). Dr. Afroz found that Claimant had marked limitation of pervasive loss of interest in almost all activities; appetite disturbance with weight change; pathological dependence, passivity or aggressively; persistent disturbance of mood or affect; inflated self-esteem; and sleep disturbances (Tr. at 986-987). Dr. Afroz indicated that Claimant had extreme bipolar syndrome with a history of manic and depressive symptoms. He opined that Claimant would be absent from work five or more days a month. Dr. Afroz opined that Claimant is not able to deal with crowds or too many people, due to panic attacks (Tr. at 988).

Credibility

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2014); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *see also, Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. *Craig*, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is

not determinative. *Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2014). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2014).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect

11

the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186, at *2. 416.920(c).

*Craig* and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. *Craig*, 76 F.3d at 585, 594; SSR 96-7p, 1996 WL 374186, at *2 ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. *Craig*, 76 F.3d at 595. Nevertheless, *Craig* does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which *Craig* prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

Claimant asserts that:

> Based on the evidence of record, it is apparent that the exacting requirements of the Social Security Disability Reform Act of 1984 have been met. This "mutually supportive test" was recognized in *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987), and should be applied in the instant case to allow the Plaintiff the ability to satisfy the rigors of 42 U.S.C. § 423(d)(5)(A). The standards enunciated

> in the Reform act are as follows:
>
> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings) would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or, laboratory techniques (for example, deteriorative nerve or muscle tissue), must be considered in reaching a conclusion as to whether the individual is under a disability.

Social Security Ruling 96-7p provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight of the adjudicator gave to the individual's statements and the reasons for that weight.

### Substantial Evidence on the Record as a Whole

"[Judicial] review of a decision of the Commissioner . . . in a disability benefits case is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole.". *Raney v. Barnhart*, 396 F.3d 1007, 1009 (8th Cir. 2005). While not required to discuss every piece of evidence, an ALJ should discuss evidence that, if believed, could lead to a finding of disability. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); 20

C.F.R. § 404.1523 (2013); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (per curiam); *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (Determination of whether substantial evidence supports decision in social security disability case requires reviewing court to consider not only evidence in the record that supports Commissioner's determination, but also any evidence that detracts from that conclusion.); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) (In reviewing the Social Security Commissioner's denial of Supplemental Security Income (SSI) benefits for a disability, the court may not examine only the evidence favorable to the Commissioner; it must also examine contrary evidence.); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

In the present matter, the ALJ's credibility analysis consists of the following:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
> Although the claimant testified to a myriad of limitations and symptoms, both physical and mental, the record suggests that the claimant is capable of maintaining grooming and hygiene needs independently, effectively and appropriately; of engaging in household maintenance activities; of communicating with others; of performing most tasks; of responding to questions without unusual concentration or focus of attention; and that when so desired by the claimant, her[1] social relationships are of adequate depth, quality and reciprocity.
> [Claimant] said he walks two miles a day, lives alone and tends to household chores as needed, and visits with his grandmother frequently. In addition, he said he goes to MU study

---

1 The ALJ mistakenly referred to Claimant as "her" instead of "his."

> center four to five times a week wherein he spends 16 hours a time.
> The claimant said he has a long history of back and ankle pain; however, he does not demonstrate strength deficits, circulatory compromise, neurological deficits, muscle spasms, fasciculations, fibrillations; or muscle atrophy or dystrophies, which are often associated with long-standing, severe or intense pain and physical inactivity. He has responded well to treatment without significant adverse side effects. The claimant uses no assistive devices, his neurological examination was essentially normal, and his musculoskeletal examination showed no swelling, effusion or deformities.
> Given all the above, the undersigned finds the claimant's testimony to be exaggerated and not very credible (Tr. at 26-28).

Treating Physician Analysis

Defendant asserts that statements by Claimant's treating psychiatrist, Dr. Afroz, were not accompanied by objective findings to support his conclusion (ECF No. 14). Defendant asserts that "Under the relevant regulations, a medical opinion is only entitled to controlling weight if it is well-supported by clinical and laboratory evidence and consistent with the other evidence of record. 20 C.F.R. § 404.1527(c)(2)." Weight afforded treating physicians should have been considered by the ALJ. In evaluating the opinions of treating sources, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(d)(2) (2014). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence*.*" *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 416.1527(d)(2) (2014). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 416.1527(d)(2)(2014). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact and resolve conflicts of

15

evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 416.1527. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization and (6) Various other factors. Additionally, the regulations state that the ALJ "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* § 416.1527(d)(2). An ALJ may choose to give less weight to the opinion of a treating physician if there is persuasive contrary evidence.

Dr. Afroz's Mental Status Statement-Ability to Do Work-Related Activities form dated May 5, 2012,2 asserts Claimant had bipolar disorder, type I; current Global Assessment Functioning (GAF) rating of 68; and, highest GAF past year of 70 (Tr. at 958-988). Dr. Alfroz opined that Claimant would be absent from work five or more days a month (Tr. at 987). Defendant asserts that Dr. Afroz's statements were not accompanied by objective findings to support his conclusions.

## Discussion

The court finds that the ALJ's decision is not supported by substantial evidence. The

---

2 At the hearing, Claimant asserted that he contacted Dr. Afroz "some time ago" but "Dr. Alfroz will not fill out the assessment until she meets with [Claimant]" (Tr. at 34). Claimant's appointment with Dr. Afroz was three days after the hearing. At the hearing, Claimant's counsel asked the ALJ to keep the record open for ten days so that the assessment from Dr. Afronz could be submitted. The ALJ agreed. *Id.*

ALJ's decision does not contain an adequate analysis of Claimant's mental and physical impairments or an explanation of his credibility findings in keeping with the applicable regulation, case law and social security ruling. 20 C.F.R. § 404.1529(b)(2014); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). In the ALJ's analysis of Claimant's credibility, she discusses Claimant's physical and mental subjective limitations. The ALJ failed to consider objective medical findings regarding his mental and physical impairments in conjunction with Claimant's subjective limitations.

The ALJ's credibility analysis appears to be one-sided. The ALJ listed Claimant's physical and mental limitations and symptoms without discussing whether they are in conjunction with the objective medical opinions contained in the file. The extent the ALJ discussed Claimant's testimony in determining credibility was to broadly state "the claimant testified to a myriad of limitations and symptoms, both physical and mental…" (Tr. at 26). The ALJ listed statements to support her position that the Claimant is not credible, however, the ALJ did not list Claimant's statements or assertions that were allegedly contradictory. The ALJ's decision does not reflect a consideration of all the evidence of record when considering Claimant's credibility.

Based on the above, the court concludes that the ALJ's findings are not supported by substantial evidence. The ALJ's decision does not reflect a full consideration of the record as to the credibility of Claimant's mental and physical impairments and their functional affect. As such, this matter must be remanded pursuant to sentence four of 41 U.S.C. § 405(g) for further proceedings. The remaining issues shall be addressed on remand.

Accordingly, by Judgment Order entered this day, the Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) is GRANTED to the extent Claimant seeks remand and

otherwise DENIED, Defendant's Brief in Support of Defendant's Decision (ECF No. 14) is DENIED.  This matter is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is DISMISSED from the docket of this court.

    The Clerk of this court is directed to provide copies of this Order to all counsel of record.

    Enter:  March 31, 2015.

Dwane L. Tinsley
United States Magistrate Judge